UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Cassandra Ledezma, individually and on behalf of all others similarly situated, | 1:22-cv-01618 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Upfield US Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Upfield US Inc. ("Defendant") manufactures, labels, markets, and sells vegetable oil spread represented as made "With Olive Oil" under the I Can't Believe It's Not Butter! ("ICBINB") brand ("Product").



2. The relevant front label representations include "I Can't Believe It's Not Butter!," "Good Fats From Plant-Based Oils," "Contains Omega-3 ALA*," "Simple Ingredients," "45% Vegetable Oil Spread," the statement the Product is made "With Olive Oil," and a picture of two ripe olives with olive leaves and stems, across yellow and green packaging, representing the colors of butter and olives.

## I. VEGETABLE OIL SPREADS

3. Since the dawn of recorded history, humas have enjoyed butter, made from cream and salt, on a farm.

4. For the past 150 years, imitators of butter have sold yellow-colored blends of beef tallow and vegetable oil to consumers, through the product known as margarine, required to have 80% or more fat.

5. Where these non-dairy blends are less than 80% fat, they are referred to as "spreads."

6. Vegetable oil traditionally refers to oils such as corn oil, canola oil, cottonseed oil, palm oil, safflower oil, sesame oil, soybean oil and sunflower oil.

7. According to the USDA, annual consumption of margarine and spreads recently reached its lowest level since the 1940s, at roughly three pounds per person.

8. In contrast, the average person now consumes almost six pounds of butter per year, the highest level in close to 50 years.

9. There are several reasons for these changes.

10. First, as confirmed by research firm Mintel, "consumers [are] increasingly turn[ing] to butter over margarine/spreads for its natural appeal," and a "preference for less processed foods."

11. Butter is made with simple, natural ingredients like cream and salt.

12. Butter is made by churning cow's milk, without chemicals or additives.

13. In contrast, vegetable oils are heavily refined in the presence of chemical catalysts such as nickel and cadmium.

14. Second, consumers are more aware of the healthier profile of butter compared to vegetable oil alternatives.

15. Butter contains heart health(ier) fats, while vegetable oils contain harmful trans fats, a result of hydrogenation and interesterification.

16. Butter also contains calcium, and vitamins A and D.

17. Vegetable oils have no comparable nutritional value as a result of the intense processing needed to render them palatable.

18. Third, vegetable oil spreads are considered ultraprocessed foods ("UPF"), frowned upon by nutrition authorities and public health bodies.

19. To counter this decline of vegetable oil spreads, companies are increasingly incorporating alternative oils like olive oil to meet consumer demand.

## II. CONSUMER DEMAND FOR OLIVE OIL

20. Olive oil is the juice of crushed olives without additives or harsh processing.

21. Whereas vegetable oils have no flavor or aroma, olive oil is known for its peppery and grassy taste.

22. Over the past several decades, olive oil has increased in popularity and its sales exceed all other vegetable oils combined.

23. The popularity of olive oil has been helped by its association with the Mediterranean Diet, confirmed by scientific studies showing it reduces health risks.

24. Olive oil has high levels of heart-healthy fats, such as polyunsaturated and

3

monounsaturated fat, which help control cholesterol.

25. Olive oil contains antioxidants, which promote immunity, and fight free radical damage to help slow down the aging process.

26. Olive oil promotes brain function, bone strength, and balanced blood sugar.

27. The oleic acid and phenols in olive oil are linked to prevention of skin, breast and colon cancer.

### III. REPRESENTATION THE PRODUCT IS MADE "WITH OLIVE OIL" IS MISLEADING

28. Defendant markets the Product to the increasing numbers of Americans seeking to consume staple foods with ingredients known for providing health benefits, like olive oil.

29. By representing the Product as made "With Olive Oil," with pictures of olive ingredients, across green label statements and packaging, touting "Simple Ingredients," and references to nutritional properties associated with olive oil, through statements, "Good Fats From Plant-Based Oils," and "Contains Omega-3 ALA*," "Simple Ingredients," consumers expect it will contain a significant, non-de minimis amount of olive oil, in relative and absolute amounts to all oils used.

30. However, the ingredient list reveals the Product contains a de minimis amount of olive oil in relative and absolute amounts to all oils used.

**INGREDIENTS:** PURIFIED WATER, SOYBEAN OIL, PALM KERNEL AND PALM OIL, OLIVE OIL, SALT, LECITHIN (SOY), NATURAL FLAVOR, MONOGLYCERIDES, VINEGAR, VITAMIN A PALMITATE, BETA CAROTENE (COLOR).

**INGREDIENTS:** PURIFIED WATER, SOYBEAN OIL, PALM KERNEL AND PALM OIL, OLIVE OIL, SALT, LECITHIN (SOY), NATURAL FLAVOR, MONOGLYCERIDES, VINEGAR, VITAMIN A PALMITATE, BETA CAROTENE (COLOR).

31. Though the most predominant and first ingredient is water, the most predominant oil is soybean oil, the second ingredient listed.

32. The third and fourth ingredients are palm kernel oil and palm oil.

33. Olive oil is the fifth most predominant ingredient, ahead of salt.

34. The amount of olive oil is less than all other vegetable oils used – soybean oil, palm kernel oil and palm oil.

35. The small relative and absolute amount of olive oil is misleading in light of the front label stating the Product is made "With Olive Oil" with pictures of olive ingredients.

36. The amount of olive oil is insufficient to confer any of the health benefits associated with olive oil or deliver the taste of olive oil.

37. The Omega-3 ALA is provided by the non-olive oil vegetable oils.

38. The non-olive oil vegetable oils lack the health and nutritional attributes of olive oil.

**IV. "PLANT-BASED" IS MISLEADING**

39. The Product's labeling appeals to the growing number of consumers who seek "plant-based" foods and high valued ingredients like olive oil.

40. Reasons for this increased demand include a belief that plant-based foods will provide health benefits and have a less significant environmental impact compared to non-plant based foods, such as foods made from dairy ingredients.

41. According to studies and surveys, many consumers erroneously believe that describing a food or beverage as "plant based" means the Product contains only natural ingredients.

42. The labeling encourages this false assumption through the statement, "Simple Ingredients."

43. However, even though the Product promotes "Good Fats From Plant-Based Oils" such as "[Contains] Omega-3 ALA*," it is not a natural product.

44. The vegetable oil ingredients are highly refined and are subject to chemical reactions in the presence of chemical catalysts such as nickel and cadmium.

45. While the ingredients may be "Simple," they are highly processed and do not resemble their original form.

**V. CONCLUSION**

46. Defendant makes other representations and omissions with respect to the Product which are false and misleading.

47. Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

48. The value of the Product that Plaintiff purchased was materially less than its value

as represented by Defendant.

49. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

50. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

51. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.58 per 15 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

52. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

53. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

54. Plaintiff Cassandra Ledezma is a citizen of Illinois.

55. Defendant Upfield US Inc. is a Delaware corporation with a principal place of business in Hackensack, Bergen County, New Jersey.

56. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

57. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, with the representations described here, in thousands of locations, in the states covered by Plaintiff's proposed classes.

58. The Product is available to consumers from third-parties, which includes grocery

stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and/or online,

59. Venue is in the Eastern Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

60. Plaintiff Cassandra Ledezma is a citizen of Chicago, Cook, Illinois.

61. Defendant Upfield US Inc. is a Delaware corporation with a principal place of business in Hackensack, New Jersey, Bergen County.

62. Defendant is self-described as the largest "plant-based consumer product company in the world," because it is the largest manufacturer of margarines and vegetable oil spreads.

63. Defendant promotes its "plant-based" products as natural and better for health and the environment than dairy competitors, due to lower carbon emissions.

64. Defendant's I Can't Believe It's Not Butter! ("ICBINB") brand is the top selling vegetable oil spread.

65. Consumers of ICBINB know the products are not butter, but value the high quality of ingredients used, such as olive oil, and the company's honesty, by not trying to pretend it is butter.

66. The ICBINB brand is synonymous with vegetable oil spreads, similar to Kleenex for tissues or Vaseline for petroleum jelly.

67. Consumers value ICBINB over competitors, because they know ICBINB is the leader when it comes to vegetable oil spreads that are alternatives to butter.

68. For decades, consumers have relied on the ICBINB name and logo to expect honesty in all aspects of vegetable oil spreads.

69. Consumers trust the ICBINB brand to be honest with them, because it has built up a reservoir of good will when it comes to vegetable oil spreads.

70. The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and/or online,

71. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Jewel-Osco, 2940 N Ashland Ave Chicago IL 60657-8905 between November 2, 2021, and December 2, 2021, and/or among other times.

72. Plaintiff believed and expected the Product was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil because that is what the representations and omissions said and implied.

73. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

74. Plaintiff bought the Product at or exceeding the above-referenced price.

75. Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

76. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or

9

components.

77. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

78. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

79. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar vegetable oil spreads containing desired ingredients like olive oil, because she is unsure whether those representations are truthful.

## Class Allegations

80. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Wyoming, Texas, Nebraska, South Dakota, West Virginia, Utah, Idaho, Alaska, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

81. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

82. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

83. Plaintiff is an adequate representative because her interests do not conflict with other members.

84. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

85. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

86. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

87. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

88. Plaintiff incorporates by reference all preceding paragraphs.

89. Plaintiff believed the Product was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

90. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

91. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

92. Plaintiff relied on the representations and omissions to believe the Product was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

93. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

94. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

95. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

96. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

97. As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

98. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

99. The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

100. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

101. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

102. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

103. Defendant's representations affirmed and promised that the Product was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

104. Defendant described the Product so Plaintiff and consumers believed it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil, which became part of the basis of the bargain that it would conform to its affirmations and promises.

105. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

106. This duty is based on Defendant's outsized role in the market for this type of Product, one of the best known and most trusted brands of vegetable oil spreads.

107. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

108. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

109. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

110. Defendant received notice and should have been aware of these issues due to

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

110. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

112. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

113. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

114. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

115. Defendant had a duty to truthfully represent the Product, which it breached.

116. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, one of the best known and most trusted brands of vegetable oil spreads.

117. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and

commitments to quality, transparency and putting customers first, that it has been known for.

118. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

119. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

120. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

121. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

122. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made with a non-de minimis and/or predominant amount of olive oil, as opposed to containing mainly palm and soybean oil.

123. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

124. Defendant knew of the issues described here yet did not address them.

125. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

126. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

15

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: March 28, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com