UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA LEDEZMA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> UPFIELD US INC., <br><br> Defendant. | ) <br> ) <br> ) 22 C 1618 <br> ) <br> ) Judge Gary Feinerman <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### MEMORANDUM OPINION AND ORDER

Cassandra Ledezma brings this putative class action against Upfield US Inc., invoking jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and alleging misrepresentations and breaches of warranty relating to the labeling of Upfield's "I Can't Believe It's Not Butter!" vegetable oil spread. Doc. 1. Upfield moves under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 13. The motion is granted, though Ledezma will be given a chance to replead.

### Background

In resolving Upfield's Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Ledezma's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The facts are set forth as favorably to Ledezma as those materials allow. *See Pierce v. Zoetis,*

*Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Upfield manufactures and sells vegetable oil spreads under its "I Can't Believe It's Not Butter!" brand. Doc. 1 at ¶¶ 1, 64-66. Vegetable oil spreads are an alternative to butter, *id*. at ¶¶ 14, 67, though many consumers prefer butter because of its simpler manufacturing process (the churning of milk) and nutritional content (including heart healthy fats and vitamins), *id*. at ¶¶ 10-18. Vegetable oils, by contrast, are highly processed and contain unhealthy trans fats. *Id*. at ¶¶ 15, 18, 44.

In response to the preference many consumers have for butter, producers of vegetable oil spreads are increasingly incorporating olive oil into their products, as olive oil holds many properties desirable to consumers. *Id*. at ¶¶ 19-27. Olive oil is made from the juice of crushed olives without additives or harsh processing. *Id*. at ¶ 20. It contains not harmful trans fats, but rather heart-healthy polyunsaturated and monounsaturated fats. *Id*. at ¶ 24. Consumers also appreciate olive oil's pleasant taste and aroma in contrast to generally tasteless and scentless vegetable oils. *Id*. at ¶ 21.

Ledezma purchased an "I Can't Believe It's Not Butter!" product with a front label depicting two olives and the phrase "With Olive Oil." *Id*. at ¶¶ 1-2. The front label also includes the phrases "45% Vegetable Oil Spread," "Simple Ingredients," "Good Fats from Plant-based Oils," and "Contains Omega-3 ALA." *Ibid*. Ledezma bought the product because of its labeling, which she understood to mean that the product contains a significant amount of olive oil—in her words, "a non-de minimis and/or predominant amount of olive oil" in both absolute terms and relative to vegetable oils in the product. *Id*. at ¶¶ 72-73. She also understood the

labeling to mean that the product contains only "natural ingredients" that "resemble their original form." *Id*. at ¶¶ 41, 45; Doc. 19 at 12.

Ledezma alleges that the product does not meet the expectations that she says are implied by its front label. Doc. 1 at ¶¶ 30, 35. She claims to know that the product contains insufficient olive oil based on the ingredient list appearing on its back label. *Id*. at ¶ 30. That list reads: "Purified Water, Soybean Oil, Palm Kernel and Palm Oil, Olive Oil, Salt, Lecithin (Soy), Natural Flavor, Monoglycerides, Vinegar, Vitamin A Palmitate, Beta Carotene (Color)." *Ibid*. (uppercasing removed). Because two vegetable oils (soybean oil and palm kernel and palm oil) are listed before olive oil, Ledezma knows that the product contains more of each of those two oils than it does olive oil. *Id*. at ¶¶ 30-35. And due to the presence of highly processed vegetable oils, the product fails to meet Ledezma's alleged expectation of a product composed of only natural ingredients resembling their original form. *Id*. at ¶¶ 43-45.

## Discussion

Ledezma claims that Upfield's labeling of its vegetable oil spread (a) is deceptive in violation of state consumer protection laws and (b) breaches state and federal warranty law. *Id*. at ¶¶ 88-114. She seeks money damages and an injunction ordering Upfield to correct the product's labeling or otherwise bring it into compliance with governing law. *Id*. at p. 16. The court first considers her Article III standing to seek that relief and then turns to the merits. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (holding that Article III standing must be addressed before the merits).

**I.    Subject Matter Jurisdiction**

"To establish standing, a plaintiff has the burden to establish that [she] has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

(3) that is likely to be redressed by a favorable judicial ruling.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "At the pleading stage, the standing inquiry asks whether the complaint clearly alleges facts demonstrating each element in the doctrinal test." *Ibid.* (internal quotation marks and alterations omitted). Important here, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 813 (7th Cir. 2018) ("[A] plaintiff must have standing for each form of relief sought."). Ledezma thus must establish separately her standing to sue for money damages and for prospective injunctive relief.

Ledezma's standing to sue for money damages is secure based on *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011). In that case, the plaintiffs were parents who had purchased for their children toy beads containing a chemical that was toxic if swallowed. *Id*. at 749-50. The parents had standing to sue for damages even though their children had not swallowed the beads or fallen ill. *Id*. at 750. As the Seventh Circuit explained, the parents suffered an injury in fact in the form of a financial injury: they paid more for the beads than they would have had they known about the safety risk the beads posed to their children. *Id*. at 750-51.

The same analysis obtains here. Ledezma alleges that she paid more for Upfield's vegetable oil spread than she would have if not for the label's alleged misrepresentations. Doc. 1 at ¶¶ 50, 75, 77. She therefore has standing to seek money damages for those alleged misrepresentations. *See Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848, 849-50 (7th Cir. 2000) (holding that consumers had standing to challenge a state law that resulted in their payment of

4

excise taxes to wine sellers); *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 986 (N.D. Ill. 2013) (holding that a plaintiff had standing where he allegedly paid more for deodorant than he would have absent a misrepresentation on its label); *Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1086 (N.D. Ill. 2011) (same for the labels on oatmeal and granola products).

Ledezma faces a different standard to establish standing to pursue prospective injunctive relief. "Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); *see O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."). Rather, a plaintiff seeking prospective injunctive relief must "face[] a real and immediate threat of future injury." *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (7th Cir. 2019) (internal quotation marks omitted); *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial.").

The labeling of Upfield's product does not present a risk of future injury to Ledezma. She now knows that the product does not meet her previous expectations, so she faces no risk of purchasing the product due to any misrepresentation on its label. She therefore has no standing to seek prospective relief with respect to the product. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740-41 (7th Cir. 2014) (holding that a plaintiff who was aware of a seller's allegedly unlawful sales practices could not seek injunctive relief as to those practices); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) ("Once a plaintiff knows that a product is deficient, he or she is unlikely to purchase it again, and therefore unlikely to sustain

future harm."); *see also Castillo v. Unilever U.S., Inc.*, 2022 WL 704809, at *4 (N.D. Ill. Mar. 9, 2022) (dismissing claims for injunctive relief for lack of standing where the plaintiffs were aware of the potentially harmful ingredients in the defendant's shampoo).

**II.     Merits**

Ledezma asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, Illinois warranty law, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Doc. 1 at ¶¶ 88-93, 99-114. (The complaint also asserts state law claims for fraud, unjust enrichment, and negligent misrepresentation, but Ledezma withdrew those claims in response to Upfield's motion to dismiss. Doc. 19 at 6 n.1.) Although Ledezma seeks to represent a class of plaintiffs whose claims arise under the laws of several States, Doc. 1 at ¶¶ 80-87, 94-98, her own state law claims arise under Illinois law, Doc. 19 at 7-13, and the court tailors its discussion accordingly.

Ledezma maintains that Upfield's labeling is deceptive in violation of the ICFA. *Id*. at 7. Specifically, Ledezma claims that the product's label gave rise to the false expectation that the product contains "a non-de minimis and/or predominant amount of olive oil" given its depiction of olives and the following phrases: "With Olive Oil," "Simple Ingredients," "Good Fats from Plant-based Oils," and "Contains Omega-3 ALA." *Id*. at 7-9. (Ledezma does not say how much olive oil the product contains, just that it contains less than she expected and less olive oil than other oils. Doc. 1 at ¶ 30.) She further claims that a reasonable consumer would believe that the product contains only "natural ingredients" that "resemble their original form" based on the phrases "Plant-based Oils" and "Simple Ingredients." *Id*. at ¶¶ 39-45; Doc. 19 at 12.

"A deceptive-practice claim under the ICFA has five elements: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the

6

deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018). It suffices here to consider only the first element: whether Upfield engaged in a deceptive practice.

Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). That standard is met when a plaintiff shows "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020) (internal quotation marks omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (explaining that the standard is met by a misrepresentation that "is either (1) literally false, or (2) likely to mislead (either through a statement or material omission) a reasonable consumer") (internal quotation marks omitted). Whether a statement is deceptive must be considered "in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477.

Ledezma does not plead a misrepresentation satisfying this standard. The product's front label depicts two olives and the phrase "With Olive Oil." Doc. 1 at ¶¶ 1-2. A reasonable consumer could not take those representations to mean that the product necessarily contains a particular amount of olive oil or more olive oil than vegetable oils. Indeed, Ledezma concedes that consumers know that vegetable oil spreads are made of just that—vegetable oil, *id*. at ¶¶ 64-69—and the front label itself says "45% Vegetable Oil Spread," *id*. at ¶¶ 1-2. Thus,

7

Ledezma fails to allege that the label is deceptive as to the amount of olive oil in the product. *See Cerretti v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 1062793, *2-3 (N.D. Ill. Apr. 8, 2022) (holding that an ice cream bar label depicting chocolate and the phrase "Dipped in Organic Chocolate" does not reasonably convey that the bars contain a particular amount of chocolate); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, *4 (N.D. Ill. Mar. 1, 2022) (similar for the amount of strawberry in strawberry pastries); *see also Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022) (holding that crackers marketed as "Golden Butter" could not mislead a reasonable consumer into thinking that they did not contain a "non-de minimis amount of butter substitutes").

Likewise unpersuasive is Ledezma's contention that the labeling deceptively conveyed that the product contains only "natural ingredients" that "resemble their original form." Doc. 1 at ¶¶ 41, 45; Doc. 19 at 12. As an initial matter, it is unclear what ingredients and which form(s) Ledezma expected. The court doubts, for example, that Ledezma expected only olives or olive oil in a product she knew was a vegetable oil spread. In any event, the label provides no objectively reasonable basis for Ledezma's claimed belief. It would be unreasonable to expect only natural ingredients in something close to their original form for a product that announces itself as (and that consumers know is) a vegetable oil spread. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-57 (N.D. Ill. 2015) (holding that the phrase "no refined sugars" on a granola bar label could not reasonably be understood to mean that the bar contained sugar cane in its natural form).

Ledezma submits that these conclusions run contrary to *Bell*, where the Seventh Circuit cautioned "that a rule that immunized any ambiguous label so long as it is susceptible to one non-deceptive interpretation 'would validate highly deceptive advertising.'" 982 F.3d at 477

(quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638 (2d Cir. 2018)). In *Bell*, the court rejected the argument that an "accurate fine-print list of ingredients" on a product's back label could "foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id*. at 476. In Ledezma's view, *Bell* means that Upfield cannot hide behind the front label's "literal truth"—that the product contains some olive oil—to escape liability for her expectation of a greater amount of olive oil. Doc. 19 at 10-11.

*Bell* is inapposite here because the vegetable oil product's label—front, back, or otherwise—contains no ambiguity potentially deceptive to a reasonable consumer. That is, the label's representations do not even obliquely suggest that the product contains a particular amount of olive oil, let alone the unspecified greater amount of olive oil expected by Ledezma. There is therefore no need to look to the ingredient list to clear up any potentially deceptive misrepresentation. *See Rice v. Dreyer's Grand Ice Cream, Inc.*, __ F. Supp. 3d __, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022) (rejecting a similar argument based on *Bell* because the product's label contained no potentially deceptive ambiguity).

Ledezma also suggests that this case is controlled by *Allen B. Wrisley Co. v. Federal Trade Commission*, 113 F.2d 437 (7th Cir. 1940). Doc. 19 at 11. There, the Seventh Circuit held that it was an unfair method of competition under the Federal Trade Commission Act to market soaps made with multiple oils as olive oil soaps. *Allen B. Wrisley*, 113 F.2d at 441. Essential to that holding was the Seventh Circuit's observation that "olive oil soap is one containing olive oil as its fatty ingredient to the exclusion of all other oils or fats." *Id*. at 440. That distinction renders *Allen B. Wrisley* inapposite here. While olive oil soap was understood to refer to soaps including no oil but olive oil, Ledezma does not plausibly allege that a reasonable consumer would understand Upfield's labeling to promise a particular amount of olive oil, either

9

in absolute terms or relative to vegetable oils in the product. Her ICFA claim accordingly is dismissed.

Ledezma's remaining claims are for breach of express warranty, breach of the implied warranty of merchantability, and breach of warranty under the Magnuson-Moss Warranty Act. Ledezma's only argument in support of those claims is that the product contains less olive oil than its label promised. Doc. 19 at 14-15. But as explained, Ledezma's allegations do not give rise to a reasonable inference that the product contains any particular amount of olive oil. The warranty claims are accordingly dismissed. *See Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1058 (Ill. 2007) ("If a seller delivers conforming goods, the warranty is satisfied."); *Cont'l Sand & Gravel, Inc. v. K&K Sand & Gravel, Inc.*, 755 F.2d 87, 91 n.3 (7th Cir. 1985) (holding that a breach of warranty claim failed where the goods "conformed to the warranties"); *Chiappetta*, 2022 WL 602505, at *6 ("Chiappetta's claims for breach of express and implied warranties suffer from the same infirmity as Chiappetta's ICFA claim: Kellogg never made the representation that Chiappetta claims it made."); *Floyd*, 581 F. Supp. 3d at 1110-11 (dismissing an implied warranty claim where the label did not promise "any specific amount of butter contained within the crackers").

Ledezma's state law warranty claims are defective for the additional reason that she failed to provide Upfield with appropriate notice of the product's alleged deficiencies. Under Illinois warranty law, "a 'buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 589 (Ill. 1996) (quoting 810 ILCS 5/2-607(3)(a)). Notice is unnecessary "when (1) the seller has actual notice of the defect in a product, or (2) the seller is found to have been reasonably notified by the plaintiff's complaint alleging a breach of

10

warranty." *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1026 (Ill. App. 1998). The filing of a lawsuit meets the second exception only when a consumer has suffered a personal injury as a result of a breach of warranty. *See Connick*, 675 N.E.2d at 590 ("Only a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint stating a breach of warranty action against the seller.").

Ledezma does not allege that she notified Upfield of the alleged breaches of warranty before filing this suit, nor does she allege that Upfield had actual notice of the alleged defect or that she suffered a personal injury. Doc. 19 at 14-15. The notice requirement therefore is an additional and independent reason to dismiss her state law warranty claims. *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 741-42 (N.D. Ill. 2015) (dismissing an implied warranty claim for failure to satisfy the notice requirement); *Ibarrola*, 83 F. Supp. 3d at 760 (same for an express warranty claim); *see also Chiappetta*, 2022 WL 602505, at *6 (same for both express and implied warranty claims).

## Conclusion

Ledezma's complaint is dismissed without prejudice to her filing an amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend."). Ledezma has until November 21, 2022, to file an amended complaint. If she does not do so, the dismissal will convert automatically to a dismissal with prejudice, and judgment will be entered.

October 31, 2022

_____
United States District Judge

11